**FREEMAN MATHIS & GARY, LLP**
Fredrick Hagen (SBN 196220)
fred.hagen@fmglaw.com
S. Michael Lee (SBN 199007)
michael.lee@fmglaw.com
1850 Mt Diablo Blvd, Suite 510
Walnut Creek, CA 94596
Tel: 925.466.2500

Attorneys for Plaintiff
CXR, INC., a Delaware Corporation

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CXR, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>PATHWAY DYNAMICS, LLC, a New Jersey Limited Liability Company, ANDRE LUONGO, an individual; ZENY LUONGO, an individual, VAN BURNS, an individual, PAM LEFEVRE, an individual, AUSTIN BATTENBERG, an individual and CHEYANNE WRIGHT, an individual,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF**<br>**1. MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836** *ET SEQ.;*<br>**2. BREACH OF CONTRACT;**<br>**3. BREACH OF FIDUCIARY DUTY;**<br>**4. CONVERSION**<br>**5. TORTIOUS INTERFERENCE WITH CONTRACT;**<br>**5. TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>**6. UNFAIR COMPETITION IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200** *et seq.*<br>**8. VIOLATION OF PENAL CODE § 496(c)**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Freeman Mathis
& Gary, LLP
Attorneys at Law

**INTRODUCTION**

1.    Plaintiff CXR, Inc., doing business as Virtual Driver Interactive ("VDI"), brings this action against former employees who orchestrated a calculated scheme to sabotage VDI from within while building a competing company using VDI's own confidential information, trade secrets, customer relationships, and corporate resources. This is not a case of employees who simply resigned and later started a competitor. Rather, Defendants Andre Luongo ("Andre"), Zeny Luongo ("Zeny"), Pamela Lefevre ("Lefevre"), Van Burns ("Burns"), Cheyanne Wright ("Wright"), and Austin Battenberg ("Battenberg") (collectively, "Individual Defendants") systematically planned and executed their competing venture, Defendant Pathway Dynamics, LLC ("Pathway"), while still employed by and drawing salaries from VDI. They used VDI's confidential customer lists to build Pathway's customer base, employed VDI's proprietary development work as the foundation for Pathway's competing products, fabricated false communications to VDI customers to drive them away from VDI and toward Pathway, and destroyed critical VDI information to cripple VDI's ability to continue its business operations after their coordinated mass departure.

2.    The Individual Defendants' scheme began in January 2025 when Andre, while serving as VDI's General Manager, secretly reserved the name "Pathway Dynamics, LLC" in California. One month later, Andre's wife Zeny resigned abruptly from VDI and immediately formed Pathway as a California limited liability company on February 12, 2025. Throughout February and March 2025, while the remaining Individual Defendants continued working at VDI and collecting VDI paychecks, they actively built Pathway's competing business using VDI's most valuable assets. Lefevre systematically exported VDI's entire customer relationship management database, including all customer contacts, leads, and opportunities. She used VDI's ChatGPT account to fabricate communications falsely telling VDI customers that VDI had supply chain problems, to create talking points explaining

the departures to VDI clients, and to create marketing materials for Pathway copied directly from VDI's proprietary content. Burns compiled comprehensive lists of VDI customers and leads to solicit immediately upon joining Pathway, explicitly stating the goal was to work "below the radar" to avoid detection. Wright and the other Individual Defendants withheld source code for software products VDI paid them to develop. Andre deleted Wright's entire Google Workspace account after Wright's departure, destroying years of development work and eliminating the documentary evidence of what software assets the Individual Defendants had misappropriated.

3.    The Individual Defendants coordinated scheme systematically looted VDI's confidential information through the following wrongful acts: (a) Lefevre accessed VDI's Customer Relations Management platform (Zoho) and scheduled exports of customer data on February 24, 2025, March 3, 2025, and March 10, 2025, then deleted the Leads module on March 10, 2025, leaving VDI without critical client information; (b) the Individual Defendants failed to turn over source code for multiple software products developed while employed by VDI, including the Distracted Driver Experience (DDE), In the Driver Seat (IDS) Vehicle Familiarization Course, Distracted Driver Experience VR (DDE VR), Boating Sim VT (BSVT), and Driving Essentials XE for PlayStation, among others; (c) Defendants solicited and diverted VDI client Amazon, as evidenced by a bill of lading accidentally sent to Battenberg's VDI email address showing shipment of Pathway products to an Amazon conference in Atlanta; (d) Defendants are working with VDI vendor Pacific Metal Fab (PMF), VDI's simulator frame fabricator, as evidenced by accounting emails accidentally sent to Battenberg's VDI email address; (e) Pathway created marketing newsletters using the same platform (Constant Contact) and similar styling to VDI newsletters, which were sent to VDI customer and lead lists; (f) Andre deleted VDI's product development backlog from Jira software on or around May 23, 2025, presumably migrating the information to Pathway, thus depriving VDI of critical product roadmap information; (g) the

Freeman Mathis
& Gary, LLP
Attorneys at Law

Individual Defendants created promotional materials for VDI, including a video depicting a Jeep in a garage (the "Jeep in Garage sizzle reel"), that was then copied almost identically by Pathway in website images for their IDS equivalent product; and (h) Defendants used VDI's corporate resources and marketing materials as templates to create Pathway's competing marketing materials while still employed at VDI.

## THE PARTIES

4.      Plaintiff CXR, Inc., doing business as Virtual Driver Interactive ("VDI") is a Delaware corporation, with VDI's principal place of business in Union County in the State of New Jersey.

5.      Defendant Pathway Dynamics, LLC, is a California limited liability corporation, with its principal place of business in Sacramento County, California.

6.      Defendant Andre Luongo ("Andre"), an individual, is a resident of El Dorado County, California. From November 22, 2022, through March 5, 2025, Plaintiff employed Andre as General Manager in El Dorado County, California.

7.      Defendant Zeny Luongo ("Zeny"), an individual, is a resident of El Dorado County, California. From November 22, 2022, through February 5, 2025, Plaintiff employed Zeny as Western Regional Account Manager in El Dorado County, California. Zeny is a member of Defendant Pathway.

8.      Defendant Pam Lefevre ("Lefevre"), an individual, is a resident of Gwinnett County in the State of Georgia. From November 22, 2022, through March 12, 2025, Plaintiff employed Lefevre Vice President of Marketing.

9.      Defendant Van Burns ("Burns"), an individual, is a resident of Fulton County in the State of Georgia. From November 22, 2022, through February 28, 2025, Plaintiff employed Burns as Eastern Regional Sales Manager.

10.     Defendant Cheyanne Wright ("Wright"), an individual, is a resident of El Dorado County, California. From June 29, 2015, through January 30, 2025, Plaintiff employed Wright in various capacities, initially as a contractor and

Freeman Mathis
& Gary, LLP
Attorneys at Law

1    ultimately as the sole Software Developer in the company (Senior Developer).

2        11.    Defendant Austin Battenberg ("Battenberg"), an individual, is a resident

3    of El Dorado County, California. From November 22, 2022, through March 11,

4    2025, Plaintiff employed Battenberg as Manager of Support & Operations.

5        12.    VDI is informed and believes, and on that basis alleges, that each

6    Defendant is and/or was an agent, servant, co-conspirator, and/or employee of each

7    of the other Defendants, and in doing the things alleged was acting within the course

8    and scope of said agency, conspiracy and/or employment.

9        13.    The assets of VDI have been under the same beneficial ownership since

10   October 23, 2020. Over this period and through the November 22, 2022, acquisition

11   of VDI assets by CXR, Inc., VDI has maintained continuous investment in and

12   development of its trade secret information, customer relationships, and proprietary

13   business methods.

14                          **JURISDICTION& VENUE**

15       14.    The Court has subject matter jurisdiction over this civil action pursuant

16   to 28 U.S.C. § 1331 because this action involves claims asserted pursuant to the

17   Defend Trade Secrets Act ("DTSA"), at 18 U.S.C. § 1836, et seq.

18       15.    The supplemental jurisdiction of the Court is invoked pursuant to 28

19   U.S.C. § 1367 to consider Plaintiff's remaining claims under California common law

20   and the California Uniform Trade Secret Act.

21       16.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)

22   because a substantial part of the events or omissions giving rise to the claims

23   occurred in this judicial district.

24                          **RELEVANT FACTS**

25            **History of Virtual Driver Interactive Assets and Employees**

26       17.    Cemtrex, Inc., by way of its subsidiary Cemtrex XR, Inc., purchased the

27   assets of Virtual Driver Interactive, Inc. (the "Virtual Driver Interactive assets") on

28   October 23, 2020.

Freeman Mathis
& Gary, LLP
Attorneys at Law

18.    On November 22, 2022, CXR, Inc. purchased the Virtual Driver Interactive assets from Cemtrex XR, Inc.

19.    The Individual Defendants previously worked for Cemtrex, Inc./Cemtrex XR, Inc.

20.    As part of CXR, Inc.'s acquisition of the Virtual Driver Interactive assets, the Individual Defendants were retained as VDI employees.

## Plaintiff's Trade Secrets

21.    Plaintiff has developed, compiled, and maintained a wealth of trade secret information (hereinafter referred to as "Trade Secrets") that Plaintiff uses in serving the needs of its clients, which has enabled Plaintiff to achieve and secure a competitive edge over other similar companies.

22.    Plaintiff's Trade Secrets, all of which were compiled and developed over many years through substantial efforts and expense, are not known to the public. Plaintiff's Trade Secrets are not readily ascertainable in Plaintiff's industry or in any type of trade or public directory or any other source. Additionally, this information in the hands of a competitor would enable the competitor to bypass years of development the competitor would have had to conduct on its own, at considerable time and expense.

23.    Plaintiff's Trade Secrets include, but are not limited to: (a) Plaintiff's compilations of records and information relating to its clients, prospective clients, and vendors; (b) information and documents pertaining to Plaintiff's own internal analyses and forecasts of readiness to meet client needs, market analyses, and manuals and practices; (c) the documents, methods, systems, and databases used by Plaintiff in managing and handling its client's needs; and (d) other non-public information of Plaintiff that would be valuable for a competitor or other person or entity to have.

## Plaintiff's Confidential Information

24.    In addition to Trade Secrets (as defined above), Plaintiff maintains other

Freeman Mathis
& Gary, LLP
Attorneys at Law

confidential information that has significant value for Plaintiff, or that Plaintiff has legal or contractual obligations to maintain as confidential, but does not qualify as a trade secret under applicable state or federal law (such information is referred to herein as "Confidential Information").

25.    Plaintiff's Confidential Information includes all information, correspondence, documents, and other property (whether tangible or intangible) that Plaintiff owns pursuant to California Labor Code section 2860 that do not qualify as a trade secret under applicable state or federal law. California Labor Code section 2860 states: "Everything which an employee acquires by virtue of his employment, except the compensation, which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment."

26.    Plaintiff's Confidential Information includes without limitation: (a) confidential information believed by Plaintiff to be a Trade Secret (as defined above) that ultimately does not qualify as a trade secret under applicable state or federal law but nonetheless was maintained by Plaintiff as confidential; (b) the non-trade secret but still proprietary or confidential methodologies, strategies, programs, and systems used by Plaintiff in managing client relationships and/or in soliciting, marketing, selling and providing services to its clients; (c) private and confidential communications with Plaintiff's clients; (d) confidential or private information of third parties that Plaintiff has contractual and/or legal obligations to maintain as confidential, including all client information that Plaintiff's and its employees are restricted from disclosing by federal, state or local statutes, ethics rules, or regulations; (e) proprietary or confidential financial and accounting information of Plaintiff (such as cost, pricing information, price lists, financial policies and procedures, revenues, and profit margins, targets, and forecasts); (f) proprietary or confidential information concerning Plaintiff's current and prospective clients and vendors (such as information that clients and vendors expect Plaintiff to keep as

1   confidential); (g) the identity of, and the terms and provision of any contract,

2   agreement, trade practice, custom or other agreement between Plaintiff and any

3   person, company or other entity.

4        27.    Plaintiff's Confidential Information is not known to the public.

5   Plaintiff's Confidential Information was secured with considerable time, effort and

6   expense to Plaintiff, and is not readily ascertainable by others including Plaintiff's

7   competitors.

8                    **Individual Defendants' Obligations to VDI**

9        28.    Individual Defendants were given access to Plaintiff's Trade Secrets and

10  Confidential Information (as defined above) in order to perform their duties as a

11  condition of employment with Plaintiff. Individual Defendants knew or should have

12  known of the confidential nature of this information and the fact that this information

13  was the property of Plaintiff and was not to be used or disclosed by Individual

14  Defendants without Plaintiff's express consent (which was only given to Individual

15  Defendant by Plaintiff for the purpose of benefiting Plaintiff during Individual

16  Defendants' employment).

17       29.    VDI provided its employees with an Employee Handbook that set forth

18  policies regarding confidentiality, return of company property, and protection of

19  trade secrets. VDI distributed the Employee Handbook to VDI employees, including

20  Austin Battenberg, Van Burns, Pam Lefevre, Andre Luongo, and Cheyanne Wright,

21  by VDI founder Bob Davis. Andre Luongo subsequently confirmed in an email to

22  another CXR employee that the Handbook distributed was the current version in

23  effect. Distribution of the Employee Handbook to all employees was VDI's standard

24  business practice. Upon information and belief, all Individual Defendants received

25  and acknowledged the Employee Handbook during their employment with VDI. By

26  accepting the Employee Handbook and continuing under Plaintiff's employ, the

27  Individual Defendants agreed not to retain or use VDI's confidential or proprietary

28  information following their resignations. The Employee Handbook contains a

Freeman Mathis
& Gary, LLP
Attorneys at Law

8

confidentiality provision at Paragraph 24, which states in pertinent part:

> "We retain on the Company premises, various proprietary drawings, materials, proposals, blueprints, patterns and other confidential information ("Confidential Information") used during our business, which provide us with a competitive edge. It is expected that all employees make a conscious effort to safeguard this information. All of this type of information generated by you during your tenure with the Company is of a confidential nature, is the property of the Company and cannot be removed from the Company premises or communicated to outside third parties whether via phone or computer, without written approval by the President. Any unauthorized use: removal or distribution of confidential materials is strictly prohibited and grounds for dismissal."

30.    The Employee Handbook also states, at Paragraph 25: "Your computer is Company property, provided to you for Company business only and should not be used for personal business."

31.    The Employee Handbook further contains a provision at Paragraph 31 which states that upon termination, the employee: "[w]ill ensure that all Company information or material in his/her possession or utilized in performance of his/her duties, including laptop computers and cell phones are given to Supervisor…sign a statement indicating[sic] that no confidential information is being removed from the Company premises."

**Individual Defendants' Unlawful Conduct**

32.    On October 4, 2024, Lefevre effectuated the deletion of the website "www.drivingxe.com" – the website for VDI's gaming console based training application Driving Essentials XE. Lefevre also effectuated the deletion of the corresponding links and webpages associated with Driving Essentials XE on the VDI website "www.driverinteractive.com." Lefevre requested said deletions from VDI's website support vendor, Freshy, stating "we are no longer selling this product," despite the fact that the product remained live and purchasable on the Xbox and PlayStation online stores.

33.    On January 11, 2025, Andre reserved the name 'Pathway Dynamics, LLC' in the State of California, while he was still employed with VDI.

34.    On February 5, 2025, Zeny abruptly resigned from VDI.

35.    On February 12, 2025, Zeny registered Pathway as a limited liability company in the state of California and listed herself as the manager, while all other Individual Defendants remained employed by VDI. Pathway is a direct competitor to VDI, but Zeny did not inform or disclose to VDI that she was planning on forming a competing entity while she was employed at VDI.

36.    On February 24, 2025, prior to Lefevre's resignation, Lefevre accessed VDI's Customer Relations Management platform, Zoho, and scheduled exports of VDI modules for Accounts, Contacts, Leads, Opportunities, Cases, and Notes. On March 3, 2025, Lefevre again exported multiple modules from Zoho.

37.    In addition, VDI obtained bill of lading records from its primary freight carrier R+L Carriers and obtained a confirmation of relevant shipments from its account executive, Damian Kleppe. VDI discovered that Defendants had diverted at least one VDI client and that Battenberg had received a Bill of Lading for a Pathway shipment to a client conference. This email was accidentally sent to Battenberg's old VDI email address rather than his new Pathway email address, revealing that Pathway had successfully solicited and closed business with VDI clients using information and materials Defendants obtained while employed at VDI.

38.    On February 24 and 25, 2025, within days of Burns giving her notice of resignation, Lefevre forwarded numerous inquiries made to VDI's webinquiry@driverinteractive.com email account to Burns and Andre, and copying Lefevre's personal Gmail account, flagging the inquiries as leads.

39.    On March 3, 2025, and March 4, 2025, Lefevre sent emails from VDI's 'webinquiry@driverinteractive.com' email account in response to customer inquiries that stated "[d]ue to supply chain issues, our manufacturing process is now experiencing significant delays. As a result, we are currently unable to provide our

standard timelines and pricing with the usual promptness. Please know that our team is actively working to resolve these issues and to restore our production schedule as soon as possible."

40.    On March 4, 2025, Lefevre emailed an exemplar customer inquiry response to Defendant Battenberg, saying, "FYI, this is what I'm sending to all inquiries now."

41.    On March 5, 2025, Andre abruptly resigned from VDI.

42.    After forming Pathway, a website was created for Pathway, which strongly resembles VDI's website. While still employed by VDI, former VDI employee Lefevre, who is now employed with Pathway, used Chat GPT to: create a list of reasons about why [the Individual Defendants] are leaving the company and creating a new driver simulator company; create a letter telling customers that she is leaving VDI; create bullet points for other salespeople to deliver to VDI's customers about why they're leaving to start another company; create a letter to VDI's customers who request quotes stating that VDI had a supply chain issue; and use VDI's own public and non-public materials to create website content for Pathway, as evidenced by Screenshots of these ChatGPT queries.

43.    On March 10, 2025, at approximately 11:00 a.m. Lefevre scheduled exports of the "Leads" and "Accounts" modules. Later on the same day, at approximately 4:00 p.m., Lefevre deleted the "Leads" module, leaving VDI without that information.

44.    On March 18, 2025, approximately two (2) weeks after her abrupt resignation, Burns emailed other Pathway employees about contacts she intended to reach out to, including "Major Customers or Customers installed in last 5 years (>2020)"; "All other Customers installed prior to 2020"; and "All LEADS (old and new)". Burns also writes in the same email that "my LEAD and PAST CUSTOMER lists are sizable." Burns also stated "My thought was to follow up this CONTACT mailing with a Pathway Dynamics Support Agreement email from Austin (so they

Freeman Mathis
& Gary, LLP
Attorneys at Law

see a familiar service name) for recent or large customers to cover them service-wise for a 12 month transition period and get them on board with PD as soon as possible."

45.    In response to Burns's March 18, 2025, email, Lefevre emailed the other Pathway employees stating "Because we are trying to do this below the radar, we will delay press releases, etc."

46.    Lefevre used ChatGPT linked to her VDI Gmail account and reimbursed by VDI to plan, execute, and conceal Defendants' competing venture while still employed by VDI, including but not limited to the following acts: (a) creating fabricated letters and email responses to VDI customers and prospective customers falsely claiming supply chain issues and manufacturing delays despite no such issues existing, which communications were knowingly false and intended to deter customers from purchasing from VDI; (b) generating coordinated talking points and scripts for Defendants to deliver to VDI customers explaining why they were leaving VDI and starting a new company, including messaging designed to preserve those customer relationships for immediate solicitation by Pathway; (c) developing marketing materials, website copy, and positioning statements for Pathway using VDI public and non-public materials, including the IDS project, proprietary product descriptions, internal positioning, and confidential business information; (d) brainstorming product names and descriptions for Pathway offerings, including names and functional concepts that mirrored or were derived from VDI products which Defendants had developed or overseen while employed at VDI; (e) generating product images and simulator concept visuals for Pathway using VDI-developed simulator designs and concepts as reference inputs; (f) creating the Pathway logo, branding assets, and marketing graphics using VDI website graphics as source material; and (g) preparing Pathway's initial website content and launch materials before Defendants' resignations, demonstrating that Defendants were not merely planning lawful competition, but were actively executing a competing business using

VDI resources, confidential information, and customer relationships while still owing duties of loyalty to VDI.

47.    During the Individual Defendants' employment and after, critical misconduct evidence was systematically deleted, covering their tracks.

48.    Lefevre deleted marketing emails and other critical communications from her VDI email account before and after her departure, leaving only fragmentary reply emails visible in the accounts of other VDI employees.

49.    Burns deleted all emails from the "sent" folder of her VDI email account prior to her resignation from VDI. Burns also deleted emails with VDI customers from her VDI email account's inbox prior to her resignation from VDI.

50.    The aforementioned deletions make it impossible for VDI to reconstruct the full scope of Lefevre's and Burns's communications with VDI clients and their coordination with other Individual Defendants in planning their scheme to loot VDI Trade Secrets for their competing venture.

51.    Compounding the damage, after Wright's departure, Andre deleted Wright's entire Google Workspace account, which contained years of critical software development work. On information and belief, Andre accessed and deleted Wright's company email account after Wright resigned from the company but before Andre formally tendered his own resignation, on March 5, 2025. Wright had sent Andre multiple emails containing links to final builds of software products with detailed explanations of her development work, as well as links to work in progress. When Andre deleted Wright's Google Workspace account, he destroyed all substantive Google Drive linked to Wright's emails, including both finished projects and all development work in progress.

52.    The deletion of Wright's Google Workspace account destroyed a significant portion of VDI's development work that was not stored in Unity Cloud. This included complete source code for multiple products that Wright had developed or substantially contributed to during her VDI tenure. The timing and completeness

of this deletion demonstrates Andre's intent to deprive VDI of its proprietary software assets while simultaneously preventing VDI from documenting the full extent of what the Individual Defendants failed to turn over or misappropriated.

53.     Andre's deletion of Wright's account is particularly damaging because it destroyed the documentary trail showing what software assets Wright developed for VDI and what Wright took with her when she left to join Pathway.

54.     Jira logs confirm that Andre accessed VDI's Jira project management system in May 2025 and deleted VDI's entire product development backlog, including tasks, user stories, and product roadmap information that VDI had compiled over multiple years of development planning, as well as source tracking for Unity-based simulators like DDE, IDS, BSVT, and others. This occurred after Andre had already resigned from VDI and had formed Pathway, demonstrating that Andre used his residual access to VDI systems to sabotage VDI's business and destroy evidence of wrongdoing.

**Pathway's Unlawful Conduct by and Through Its Agents**

55.     Defendant Pathway, for its part, acting by and through its agents, the Individual Defendants, has unfairly benefitted from use of Plaintiff's efforts.

56.     Pathway, via the Individual Defendants, had knowledge of the obligations the Individual Defendants had to Plaintiff.

57.     Notwithstanding that knowledge, Pathway did nothing to prevent the Individual Defendants from their conduct alleged herein.

**<u>Pathway Continues to Use VDI's Trade Secret/Confidential Information</u>**

58.     VDI recently discovered further evidence confirming that Defendants continue to use VDI's confidential and proprietary information in the course of doing business with former and prospective VDI customers. On January 6, 2026, an email exchange was inadvertently received in which Defendant Zeny Luongo, acting on behalf of Pathway Dynamics, confirmed a shipment of a "CAB49" simulator model to a customer that was formerly engaged with VDI.

Freeman Mathis
& Gary, LLP
Attorneys at Law

59.     This customer was known internally to VDI, and VDI's records reflect that this individual had ongoing technical issues that VDI had committed to resolve through the implementation of "VDE 4," VDI's forthcoming software update. Defendants were aware of these unresolved support obligations based on their prior employment at VDI and their access to confidential customer service records and future development timelines.

60.     The Individual Defendants failed to turn over complete and functional source code for multiple software products they developed while employed by VDI. Specifically, there is no evidence of VDE 4 development during the period when the Individual Defendants were preparing to leave the company, even though they were being paid by VDI to perform this development work. The products for which source code was either withheld, corrupted, or never performed despite representations otherwise, include: (a) any build-ready versions or installer files developed using Advanced Installer; (b) Distracted Driver Experience (DDE) - not provided in Unity Cloud Version Control turnover; (c) In the Driver Seat (IDS) - a Vehicle Familiarization program developed under VDI but never released and not provided during turnover; (d) Distracted Driver Experience VR (DDE VR) - discovered to have been pursued and developed but never provided during turnover; (e) Boating Sim VT (BSVT) - not provided during Unity Cloud Version Control turnover; (f) Driving Essentials XE for PlayStation - not provided as part of turnover, despite ongoing royalty generation; (g) portions of the Vantage program, including the Advanced Installer source code necessary to create installers; and (h) other legacy projects.

61.     Not only did Pathway close a sale with this former VDI customer, but they did so while utilizing product nomenclature that is confusingly similar to VDI's proprietary product codes (namely, "CAB49" versus VDI's "LX49C"), further demonstrating Defendants' intent to trade on VDI's goodwill and misappropriate its business model and customer relationships.

Freeman Mathis
& Gary, LLP
Attorneys at Law

62.     This customer's information was among the internal contact lists that Defendants compiled and took prior to their coordinated mass resignation from VDI. Those lists, which VDI has previously identified as confidential and protected information, were expressly earmarked by Defendants as targets for solicitation on behalf of Pathway.

63.     VDI is informed and believes that this error demonstrates that Pathway's customers are confused about the relationship between Battenberg, Pathway, and VDI and are specifically confused as to whether Battenberg remains affiliated with VDI. This confusion is the direct result of Battenberg and the other Individual Defendants leveraging their prior VDI affiliations and confidential customer relationships to divert VDI clients to Pathway. The customer involved was previously part of VDI's support pipeline, and VDI had committed to resolving her issues through its "VDE 4" software release. These actions further support VDI's claims of ongoing and knowing misappropriation, unfair competition, and breach of the Individual Defendants' legal and contractual duties to VDI.

64.     This most recent example is not an isolated incident but part of a continuing pattern of wrongful conduct by Defendants. Defendants have systematically targeted VDI's existing and prospective clients using confidential information obtained during their VDI tenure, all advance Pathway's business and to harm VDI's business. An injunction is necessary to prevent ongoing harm.

**COUNT I**
**MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1831 *ET SEQ.*)**
**(Against All Defendants)**

65.     VDI incorporates by reference its allegations set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

66.     Upon information and belief, prior to her departure from VDI, Lefevre copied files from VDI's Customer Relations Management platform, including details regarding non-public clients and leads for VDI, which are trade secrets of VDI

Freeman Mathis
& Gary, LLP
Attorneys at Law

subject to protection under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.*

67. This information is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use. VDI has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which would be of great value to any competitor.

68. Any information contained in these files and data is related to products or services used in, or intended for use in, interstate commerce.

69. VDI takes, and at all times relevant hereto, has taken reasonable measures to maintain the confidential and secret nature of this information.

70. Lefevre engaged in this conduct despite acquiring this information under circumstances giving rise to a duty to maintain the information's secrecy and limit its use, which is a duty Lefevre owed and continues to owe VDI as a former employee of VDI.

71. Lefevre stole VDI's trade secrets for the reason that doing so would give Pathway an advantage in soliciting clients, that she and other Individual Defendants serviced on behalf of VDI, to move their business to Pathway.

72. Lefevre's conduct constitutes an actual and threatened misappropriation and misuse of VDI's trade secret information in violation of the DTSA.

73. Upon information and belief, Pathway acquiesced in the aforementioned conduct by Lefevre and knowingly received stolen trade secret files that Lefevre and Pathway are using on Pathway's behalf and for Pathway's benefit. Pathway continues to benefit from Lefevre's actions as alleged herein.

74. Similarly, the Individual Defendants' failure to turn over complete source code for software products, including DDE, IDS, DDE VR, BSVT, Driving Essentials XE for PlayStation, portions of the Vantage program, and other legacy projects, constitutes misappropriation of VDI's trade secrets.

Freeman Mathis
& Gary, LLP
Attorneys at Law

75.     Andre's deletion or migration of VDI's Jira product backlog on or around May 23, 2025, constitutes misappropriation of VDI's trade secret product development information.

76.     The Individual Defendants' use of VDI's corporate ChatGPT resources and VDI's marketing materials as templates to create Pathway's competing marketing materials while still employed at VDI constitutes misappropriation of VDI's trade secrets.

77.     As a direct and proximate result of Defendants' actual and threatened misappropriation of VDI's trade secrets, VDI has suffered irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Defendants are enjoined from engaging in any further acts of misappropriation and from continued possession in any form of trade secret information belonging to VDI.

78.     As a direct and proximate result of Defendants' actual and threatened misappropriation of VDI's trade secrets, VDI has suffered financial and reputational damages.

79.      As a direct and proximate result of the above-described acts of misappropriation, VDI has suffered and/or will suffer damages and is entitled to all damages, attorneys' fees, costs, and remedies permitted under the DTSA.

80.     Each of the acts of misappropriation was done maliciously by Defendants, thereby entitling VDI to exemplary damages to be proven at trial.

**COUNT II**
**BREACH OF CONTRACT**
**(Against Individual Defendants)**

81.     VDI incorporates by reference its allegations set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

82.     As a condition of their employment with VDI, the Individual Defendants received and assented to the terms and conditions of the Employee Handbook, including its confidentiality policies and provisions.

83.     The Employee Handbook is a valid and enforceable contract that

prohibits the Individual Defendants from using, disclosing, or retaining any of VDI's Confidential Information except for the benefit of VDI.

84.    VDI has met all of its obligations to the Individual Defendants under the Employee Handbook.

85.    The Individual Defendants have breached or plan to breach the Employee Handbook by retaining, using, and/or disclosing VDI's Confidential Information.

86.    The Individual Defendants breached their employment obligations by failing to return VDI's Confidential Information, including complete source code for DDE, IDS, DDE VR, BSVT, Driving Essentials XE for PlayStation, portions of the Vantage program, other legacy projects, and VDI's computer equipment.

87.    The Individual Defendants' actions constitute a breach of their confidentiality obligations with VDI pursuant to the Employee Handbook.

88.    As a direct and proximate result of the Individual Defendants' actions in breach of the Employee Handbook, VDI has sustained and/or will sustain damages and is faced with irreparable harm such that injunctive relief is appropriate.

## COUNT III
## BREACH OF DUTY OF LOYALTY
### (Against the Individual Defendants)

89.    VDI incorporates by reference its allegations set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

90.    By virtue of their status as former employees of VDI, the Individual Defendants have a duty of loyalty with respect to VDI's business. As a result, they were required to protect the confidential information and trade secrets of VDI and to act in VDI 's interest at all times while employed and paid for their services.

91.    Andre, in his role as VDI's General Manager, had the authority to hire and fire employees, led all sales and marketing activities, led all product development initiatives, controlled all VDI operations from order processing to order fulfillment, and accessed VDI's confidential financial information.

Freeman Mathis
& Gary, LLP
Attorneys at Law

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

92.    Accordingly, VDI reposed the utmost faith, confidence, and trust in Andre to dutifully and loyally manage VDI's operations as VDI's General Manager.

93.    As VDI general manager, Andre knowingly and voluntarily accepted VDI's confidences and agreed to act primarily for VDI's interests.

94.    Based on his role as General Manager of VDI, Andre owed a duty of loyalty to VDI.

95.    The Individual Defendants breached their duty to VDI by engaging in misconduct that served their own self-interests and the interests of others rather than the interests of VDI while they were still employed by VDI. The Individual Defendants have acted in a manner inconsistent with the best interests of VDI – to wit, forming a new company as a direct competitor to VDI, soliciting VDI clients during their employment with VDI, and diverting VDI clients to Individual Defendants' new competing venture Pathway.

96.    As a direct and proximate result of The Individual Defendants' breach of their duty of loyalty, VDI has incurred damages and is faced with irreparable harm such that injunctive relief is appropriate.

97.    The Individual Defendants' actions, as alleged above, were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of VDI.

**COUNT IV**
**CONVERSION**
**(Against All Defendants)**

98.    VDI incorporates by reference its allegations set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

99.    At all times alleged herein, VDI was the rightful owner and entitled to possession of its property, including, but not limited to, electronic documents containing confidential information that Individual Defendants had access to during their employment with VDI.

/ / /

Freeman Mathis
& Gary, LLP
Attorneys at Law

100.   Defendants knowingly and intentionally interfered with VDI's dominion, possession, use, and ownership of its confidential information by misappropriating such information, deleting it from VDI's computer systems, and converting such information to their own possession and use. As alleged above, the confidential information Defendants misappropriated are the property of VDI.

101.   Defendants failed to return the IDS content, source code, and other proprietary materials that they created while working for VDI.

102.   Defendants created a promotional video (the "Jeep in Garage sizzle reel") that was identical to internal VDI development projects, thereby converting VDI's proprietary creative work.

103.   Defendants failed to return computer equipment purchased by VDI, thereby converting VDI's tangible property.

104.   Defendants failed to return and/or destroyed proprietary development builds contained in VR headsets that were improperly taken from VDI.

105.   Defendants knew or had reason to know that VDI was lawfully entitled to the property, but intentionally withheld it and stole or used it without VDI's authorization to damage VDI, and with a conscious disregard for VDI's lawful right to ownership and possession of the confidential information.

106.   VDI's property that Defendants took without authorization is valuable, as it was compiled by VDI through substantial investment of time and resources.

107.   Defendants have failed to return this property and have used it to their benefit at the expense of VDI. Thus, VDI has suffered the actual loss of the property, the value of which is an amount to be determined at trial.

108.   As a proximate and/or direct result of Defendants' actions in misappropriating and/or misusing VDI's property, VDI has suffered and will continue to suffer consequential damages in an amount to be determined at trial.

109.   Defendants' failure to return VDI's confidential information threatens to cause irreparable harm to VDI. So long as the confidential information Defendants

Freeman Mathis
& Gary, LLP
Attorneys at Law

took without authorization remains in an unsecure, unsafe or unknown location, the confidential information is in jeopardy of being hacked, leaked, disclosed, misused, distributed or destroyed. Thus, VDI is entitled to temporary, preliminary, and permanent injunctive relief ordering Defendants to immediately return all confidential information of VDI within their possession, custody or control.

**COUNT V**
**TORTIOUS INTERFERENCE WITH CONTRACT**
**(Against All Defendants)**

110.   VDI incorporates by reference its allegations set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

111.   As part of its business conduct with clients, VDI executes contracts with clients for the provision of products and/or services.

112.    Defendants were aware of the agreements between VDI and its clients.

113.   Defendants knowingly solicited VDI clients in order to convince those clients to terminate their existing agreements with VDI and move their business to Pathway, including the Maria Tiberi Foundation.

114.   Defendants intentionally and knowingly interfered with one or more agreements between VDI and its clients.

115.   Defendants have no justification for their intentional interference with the Agreement.

116.   Defendants knowingly solicited VDI clients by accessing and using VDI's proprietary customer lists and contact information obtained through their employment at VDI.

117.   As a direct and proximate result of the actions of Defendants, VDI has sustained and/or will suffer damages and is faced with irreparable harm such that injunctive relief is appropriate.

118.   Defendants' conduct was willful and malicious and demonstrates a complete indifference to or a conscious disregard for the rights of VDI, entitling VDI to an award of punitive damages.

Freeman Mathis
& Gary, LLP
Attorneys at Law

1
2
3

**COUNT VI**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC**
**ADVANTAGE**
**(Against All Defendants)**

4      119.    VDI incorporates by reference its allegations set forth in all preceding

5  paragraphs of this Complaint as if fully set forth herein.

6      120.    Zeny formed Pathway with the intent of creating a competing business

7  and reaping future economic benefits from VDI's clients.

8      121.    The Individual Defendants and Pathway knew that VDI's client contact

9  information was confidential and was to be used for the sole benefit of VDI.

10      122.    On or about April 30, 2025, VDI learned that Zeny had reached out to a

11  prospective client that Zeny worked with during her employment at VDI and

12  attempted to direct the prospective client's business to Pathway.

13      123.    VDI is informed and believes Pathway solicited this client using VDI's

14  confidential and trade secret information for Pathway's sole benefit and to the

15  detriment of VDI, which directly violated the Employee Handbook.

16      124.    VDI is informed and believes Defendants sent deceptive

17  communications to VDI's prospective customers falsely claiming supply chain issues

18  and manufacturing delays, then immediately solicited those same customers for

19  Pathway after departing VDI.

20      125.    Pathway would not have been able to solicit this client without VDI's

21  confidential and trade secret information.

22      126.    As a result, VDI lost out on profits and suffered economic harm and is

23  faced with irreparable harm such that injunctive relief is appropriate.

24

25

26

**COUNT VII**
**UNFAIR COMPETITION—BUSINESS AND PROFESSIONS CODE § 17200**
*et seq.*
**(Against All Defendants)**

27      127.    VDI incorporates by reference its allegations set forth in all preceding

28  paragraphs of this Complaint as if fully set forth herein.

Freeman Mathis
& Gary, LLP
Attorneys at Law

128.   Defendants' conduct violates California Business and Professions Code section 17200 et seq. under both the "unlawful" and "unfair" prongs of the unfair business practices law.

129.   This cause of action for unfair competition is not based on the misappropriation of any Trade Secrets. Rather, VDI bases this cause of action on (a) the actions of the Individual Defendants while they were still employed by VDI in breach of their duty of loyalty and/or contract with VDI, (b) conversion of a separate category of information defined above as Confidential Information, and in which VDI has a separate, legally cognizable property interest, and (c) the Defendants' other deceptive and unfair business practices that are alleged in this Complaint.

130.   On information and belief and in violation of California Business and Professions Code sections 17200 et seq., the Defendants' improperly misappropriated, removed, retained, and/or began using VDI's Confidential Information that VDI owns in accordance with Labor Code § 2860, as alleged above.

131.   Under the "unlawful" prong, Defendants improperly misappropriated, retained, and began using VDI's Confidential Information in violation of the DTSA, common law duties, contractual obligations, and fiduciary duties owed to VDI.

132.   Under the "unfair" prong, Defendants engaged in conduct that threatens an incipient violation of law and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to VDI, including but not limited to the following:

133.   Defendants used VDI's own corporate resources, including its company-reimbursed ChatGPT account linked to Lefevre's VDI Gmail, to systematically plan, develop, and launch a competing business while still employed by and owing duties of loyalty to VDI. This conduct offends established public policy requiring employee loyalty and honest dealing with employers.

134.   Defendants deliberately sent false and deceptive messages to VDI's customers and prospective customers, falsely claiming supply chain issues and manufacturing delays that did not exist, for the purpose of driving those customers

Freeman Mathis
& Gary, LLP
Attorneys at Law

1    away from VDI and toward Pathway. This deceptive conduct was executed using

2    VDI's own email systems and customer inquiry accounts while Defendants were still

3    employed by VDI.

4        135.   Defendants operated "below the radar" (as Lefevre explicitly stated in

5    her March 18, 2025, email) to conceal their competing activities from VDI,

6    demonstrating conscious awareness that their conduct was improper and designed to

7    evade detection while they systematically dismantled VDI's business relationships

8    and misappropriated its confidential information.

9        136.   Defendants copied VDI's internal IDS project, which was not visible to

10   outside competitors and represented substantial VDI investment in development

11   resources, and launched a parallel competing product at Pathway using VDI's

12   proprietary designs, concepts, and development work.

13       137.   Defendants used VDI's development output, proprietary product

14   concepts, confidential business information, and trade secrets to create competing

15   products and marketing materials for Pathway, gaining an unfair competitive

16   advantage they could not have achieved through legitimate means.

17       138.   The utility of Defendants' conduct is substantially outweighed by the

18   gravity of the harm to VDI, which includes loss of customer relationships, loss of

19   trade secret protection, loss of competitive advantage, and damage to VDI's business

20   reputation and market position.

21       139.   Defendants' conduct violates fundamental policies of honest dealing,

22   fair competition, and employee loyalty that are essential to legitimate business

23   relationships and competitive markets.

24       140.   The Individual Defendants' actions are part of a deliberate scheme and

25   plan to deprive VDI of the benefits of its own substantial investment and efforts and

26   to steal the fruits of several years of labor, and to give the Individual Defendants and

27   Pathway an unfair competitive advantage.

28   / / /

Freeman Mathis
& Gary, LLP
Attorneys at Law

141.   As a proximate result of the Defendants' acts as alleged above, VDI has to date suffered, and will continue to suffer damages, unless the Defendants are enjoined from using VDI's Confidential Information that they have misappropriated. Thus, as a proximate result of the Defendants' wrongful acts, VDI is entitled to restitution as provided for by California Business and Professions Code sections 17200 et seq. and a constructive trust in which the Defendants, as constructive trustee, hold their income, profits, commissions, fees, revenues or other funds, received as a result of his wrongful acts alleged herein above, for VDI's benefit.

142.   The Defendants' wrongful conduct in using and/or disclosing VDI's Confidential Information will continue unless and until the Defendants are enjoined and restrained by order of this Court. Without such involvement, the Defendants conduct in stealing the fruits of VDI's business investments will cause great and irreparable injury to VDI's business in that VDI will lose and/or are at risk of losing business by virtue of the Confidential Information that the Defendants have obtained and misappropriated wrongfully.

143.   VDI has no adequate remedy at law for the injuries currently being suffered in that the Defendants will continue to wrongfully use and/or disclose or be a threat to use or disclose VDI's Confidential Information that was wrongfully misappropriated, including but not limited to any information concerning VDI's clients and claims handling practices that is not generally available to the public at large. VDI is entitled to a temporary, preliminary and permanent injunction against the Defendants, as prayed herein.

144.   On information and belief, the Defendants' conduct was willful and malicious, oppressive, fraudulent, despicable and in conscious disregard of the rights of VDI , and the resulting harm to VDI. Defendants acted with the intent to cause injury and to obtain an unfair competitive advantage over VDI in the marketplace. Therefore, the Defendants are liable for restitution and exemplary and/or punitive damages in an amount to be established according to proof at trial for unfair

Freeman Mathis
& Gary, LLP
Attorneys at Law

competition, and a permanent injunction against the Defendants is warranted enjoining the Defendants' unfair competition as alleged in the prayer below.

145.   The rights invoked herein petition for, implicate, invoke, and demand the enforcement of important rights affecting the public interest. Furthermore, because the relief sought will provide a significant benefit to the general public at large, VDI is entitled to an award of attorneys' fees to reimburse VDI for attorneys' fees incurred by undergoing the burden of seeking the private enforcement of statutes vindicating important public rights, including the right of the public to be free from illegal restraints of trade, unfair competition, and violations of the California Business and Professions Code.

## COUNT VIII
## VIOLATION OF CALIFORNIA PENAL CODE § 496(c)
### (Against Pathway, Andre, and Zeny)

146.   VDI incorporates by reference its allegations set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

147.   Defendants Pathway, Andre, and Zeny received, concealed, and withheld computer equipment that was purchased by VDI, knowing that the property was obtained by theft and with the intent to permanently deprive VDI of its property.

148.   VDI has evidence of the purchase of the computer equipment and the original packaging, but the equipment was never returned by Defendants despite VDI's demands.

149.   California Penal Code § 496(c) provides for treble damages, attorney's fees, and court costs for victims of theft, including business fraud, conversion, and receiving stolen property.

150.   Defendants acted with criminal intent to permanently deprive VDI of its property.

## PRAYER FOR RELIEF

WHEREFORE, for the wrongful acts of Defendants complained of in the

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Freeman Mathis
& Gary, LLP
Attorneys at Law

foregoing counts, VDI respectfully requests the following relief:

A.    Judgment in VDI's favor and against Defendants;

B.    Permanent injunctive relief prohibiting any further wrongful possession, disclosure, and/or use of VDI's Confidential and Trade Secret Information, and preventing Defendants from profiting or benefiting from their wrongful conduct;

C.    An order that Defendants return to VDI and purge from their possession, custody, and control any and all documents, computer-based files or data, or information in any form, whether originals, copies, compilations, or derivations, which were removed from VDI or any VDI -owned computer(s) issued to the Individual Defendants or by VDI, or which were otherwise obtained by Defendants or anyone acting on their behalf or in concert with them;

D.    An order that Defendants return any and all confidential and/or trade secret information of VDI and an order prohibiting any further use or benefit from the use of said information;

E.    An order that Defendants return all computer equipment and tangible property belonging to VDI;

F.    An order that Defendants refrain from further solicitation of any clients or potential clients of VDI that the Individual Defendants or other Pathway employees are and/or have already solicited through the use of VDI's Confidential Information and/or have otherwise misappropriated such information;

G.    An order that the Individual Defendants and Pathway cease and desist from conducting any further business with any VDI clients or prospective clients that the Individual Defendants, or other former VDI employees/current Pathway employees solicited through use of VDI Confidential Information;

H.    An award of compensatory damages to VDI in an amount to be determined at a hearing and/or trial including, but not limited to, the attorney's fees, computer forensic fees and costs VDI has incurred to investigate and address Defendants' unauthorized access and improper use of VDI's computers or computer

Freeman Mathis
& Gary, LLP
Attorneys at Law

1   information;

2        I.      An award of treble damages under California Penal Code § 496(c);

3        J.      An order directing Defendants to disgorge all gross revenues and profits

4   that they or anyone acting in concert or participation with them received as a result of

5   their wrongful conduct, in an amount to be determined at trial;

6        K.     An award in favor of VDI for its costs associated with this action,

7   including without limitation its attorneys' fees under the Defend Trade Secrets Act;

8        L.      An award of exemplary damages in an amount twice the total of the

9   damages recovered for actual loss as permitted by 18 U.S.C. § 1836(b)(3)(C);

10       M.    An award of punitive damages in an amount to be determined at trial;

11       N.     An award against all Defendants for attorneys' fees under Penal Code §

12   496(c) and 18 U.S.C. § 1836(b)(3)(D), and against the Individual Defendants and

13   pursuant to the breach of the Employee Handbook provisions;

14       O.     An award of pre-judgment and post-judgment interest;

15       P.      An order imposing a constructive trust;

16       Q.     An order that the Individual Defendants, and any other former VDI

17   employees immediately comply with the Agreement; and

18       R.      Any such other legal and equitable relief as the Court deems

19   appropriate.

20                            **DEMAND FOR JURY TRIAL**

21       Plaintiff demands trial by jury to the fullest extent as allowed by law.

22

23   Dated:  March 10, 2026          **FREEMAN MATHIS & GARY, LLP**

24

25                          By: * /s/ Fredrick A. Hagen*

                             FREDRICK HAGEN

26                             Attorneys for Plaintiff

                             CXR, INC., a Delaware Corporation

27

28

Freeman Mathis
& Gary, LLP
Attorneys at Law

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF